IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Josh Nelson, on behalf of himself
and all others similarly situated,**

       **Plaintiffs,**

**v.**                                                  Case No. 17-2237-JWL

**Firebirds of Overland Park, LLC;
and Firebirds International, LLC,**

       **Defendants.**

## MEMORANDUM & ORDER

Plaintiff is a former server at defendants' restaurant location in Overland Park, Kansas. He filed this wage and hour lawsuit, individually and on behalf of others similarly situated, against defendants alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and various state wage payment laws. Plaintiff alleges that defendants, while taking advantage of the FLSA's "tip credit" provision, required him and putative class members to spend more than 20 percent of their time performing non-tip-producing "side work" activities. This matter is presently before the court on plaintiff's motion for conditional class certification under § 216(b) of the FLSA (doc. 39) and defendants' motion for partial summary judgment (doc. 42).[1] As set

---

[1] On May 14, 2018, counsel for defendants sent an email to the court requesting oral argument on both motions. Because oral argument would not clarify any issues in the parties' submissions (which are sufficient for resolution of the motions) or assist the court in any meaningful way, the court denies this request.

forth in more detail below, plaintiff's motion is granted in part and denied in part and defendants' motion is denied.

*Background*

From December 2013 through November 2015, plaintiff Josh Nelson worked as a server for defendants at one of defendants' restaurants in Overland Park, Kansas. During that time, defendants paid plaintiff $2.15 per hour and relied on the "tip credit" provision of the FLSA to make up the difference between the paid wage and the federal minimum wage. *See* 29 U.S.C. § 203(m). Plaintiff asserts that he routinely spent more than 20 percent of his time performing "non-tip-producing activities" and that defendants violated the tip-credit provision (and the minimum wage provision) by failing to pay plaintiff the federal minimum wage for that time. Plaintiff further alleges that defendants' uniform compensation policy requires that all servers are paid exclusively under the tip-credit provision and that servers are never paid the minimum wage regardless of whether they spend more than 20 percent of their time performing non-tip-producing activities. Plaintiff alleges that defendants failed to track the amount of time spent by servers performing non-tip-producing activities and that, as a result of these policies and procedures, defendants routinely failed to pay their servers the federal minimum wage in violation of the FLSA.

*The Tip Credit Provision of the FLSA*

The Fair Labor Standards Act (FLSA) of 1938 requires employers to pay a minimum hourly wage, which is currently $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). For a "tipped

employee," defined by the statute as an employee engaged in an occupation in which he or she customarily and regularly receives more than $30 per month in tips, 29 U.S.C. § 203(t), the employer must pay a wage of at least $2.13 per hour plus an additional amount based on tips received by the employee that is equal to the difference between the $2.13 cash wage and the current $7.25 minimum wage. 29 U.S.C. § 203(m). In other words, the tip-credit provision of the FLSA permits an employer to pay tipped employees a cash wage of as little as $2.13 an hour, and then use a portion of the employees' tips to make up the difference between that hourly cash wage and the federal minimum wage. *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1283 (10th Cir. 2017) (citing 29 U.S.C. § 203(m); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011)).

As the Tenth Circuit has recognized, § 203(m)'s tip-credit provision is "not without its limits." *Id*. at 1284. The Department of Labor (DOL) has promulgated regulations to implement the tip credit and those regulations "recognize that an employee may hold more than one job for the same employer, one which generates tips and one which does not, and that the employee is entitled to the full minimum wage rate while performing the job that does not generate tips." *Id*. (quoting *Fast*, 638 F.3d at 875 (citing 29 C.F.R. § 531.56(e))). Specifically, the "dual jobs" regulation provides:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his

3

> own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

The DOL has further interpreted its dual jobs regulation through § 30d00(e) of its Field Operations Handbook (FOH), which provides "that if a tipped employee spends a substantial amount of time (defined as more than 20 percent) performing related but nontipped work, . . . then the employer may not take the tip credit for the amount of time the employee spends performing those duties." *Romero*, 849 F.3d at 1284 (quoting *Fast*, 638 F.3d at 875). Specifically, § 30d00(e) of the FOH provides as follows:

> (e) Reg 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example, a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

Field Operations Handbook § 30d00(e).[2]

In support of his motion for conditional certification, plaintiff alleges that defendants had a uniform policy that required servers to spend more than 20 percent of their time engaged in non-

---

[2] The parties treat § 30d00(e) as the applicable version of the FOH guideline and so the court does so here. However, the Department of Labor has updated the FOH such that the portion interpreting the dual jobs regulation now appears in § 30d00(f). *See* Field Operations Handbook § 30d00(f), available at www.dol.gov/whd/foh/foh_ch30.pdf.

4

tip-producing activities and that defendants unlawfully failed to pay the full minimum wage for that time.  Plaintiff, for example, alleges that defendants uniformly required servers to perform non-tip-producing tasks such as brewing coffee and tea; wiping down server station counters, beverage machines, light fixtures, tables and chairs; stocking tea, coffee, ice, glasses, and napkins; sweeping floors and "bisseling" carpets; refilling condiments; and polishing silverware.  Plaintiff alleges that the completion of these tasks routinely exceeded 20 percent of the hours worked in a work week and, thus, that servers should have been paid the full minimum wage for that time.  In other words, plaintiff asserts that defendants violated the FLSA by using § 203(m)'s tip credit for hours that, according to plaintiff, were not tip-credit eligible under 29 C.F.R. § 531.56(e) and § 30d00(e) of the applicable FOH.  Plaintiff asserts that defendants' uniform, nationwide policies requiring servers to spend more than 20 percent of their time engaged in non-tip-producing activities and refusing to pay servers the full minimum wage for that time justifies conditional certification of a nationwide class of all current and former servers employed by defendants from May 12, 2014 to the present.

Defendants oppose the motion on various grounds.  As a threshold matter, defendants contend that the DOL's interpretation of the dual jobs regulation, as set forth in § 30d00(e) of the FOH, is not entitled to deference and should be disregarded by the court.  This issue is also the basis for defendants' motion for partial summary judgment.  According to defendants, they are entitled to summary judgment on plaintiff's "tip credit" claims because those claims are based entirely on the FOH, which is not entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997).  In response, plaintiff urges that the FOH is entitled to *Auer* deference and that the FOH's interpretation of the dual jobs regulation governs plaintiff's claims in this case.  "*Auer* ordinarily

5

calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). "[T]his general rule does not apply in all cases." *Id.* As a threshold matter, *Auer* deference is warranted only if the language of the regulation in question is ambiguous, "lest a substantively new rule be promulgated under the guise of interpretation." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106, 1137 (10th Cir. 2013), *rev'd on other grounds*, 135 S. Ct. 2028 (2015). Moreover, deference is not appropriate when the agency's interpretation "is plainly erroneous or inconsistent with the regulation." *Christopher*, 567 U.S. at 155.

The two Circuit Courts of Appeal that have addressed squarely whether § 30d00(e) of the FOH is entitled to *Auer* deference are split on the issue. Defendants urge the court to follow the Ninth Circuit's opinion in *Marsh v. J. Alexander's LLC*, 869 F.3d 1108 (9th Cir. 2017), while plaintiff urges the court to follow the Eighth Circuit's opinion in *Fast v. Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011). In a 2-1 panel decision, the Ninth Circuit in *Marsh* held that § 30d00(e) of the FOH was not entitled to *Auer* deference such that the plaintiffs in that case failed to state claims for minimum wage violations. According to the Ninth Circuit, the DOL's interpretation of the dual jobs regulation is contrary to § 203(t) and inconsistent with the regulation. The Circuit further concluded that the DOL's interpretation was wholly unreasonable and was an attempt to create a de facto regulation. The dissent in *Marsh*, however, parted ways with the majority at "each step of the *Auer* deference analysis" and found that § 30d00(e) of the FOH interpreted an ambiguous regulation, and that it did so in a manner that was not plainly erroneous or inconsistent with the statute or regulation. On February 16, 2018, the Ninth Circuit granted rehearing en banc in the *Marsh* case. *See Marsh v. J.Alexander's LLC*, 882 F.3d 777 (9th

6

Cir. 2018). In *Fast*, the Eighth Circuit accorded *Auer* deference to § 30d00(e) of the FOH after concluding that § 531.56(e) is ambiguous and that the DOL's interpretation of that regulation was reasonable and neither plainly erroneous nor inconsistent with the regulation. The Eighth Circuit, then, held that the FOH's interpretation of § 531.56(e) governed the case and that the district court properly denied Applebee's motion for summary judgment

The court believes that the Tenth Circuit, if faced with this issue, would follow the lead of the Eighth Circuit in *Fast* and conclude that the DOL's interpretation of § 531.56(e) as reflected in the FOH is entitled to *Auer* deference. While the Tenth Circuit has not applied § 30d00e of the FOH, it has noted that § 203(m)'s tip-credit provision is not without its limits, has cited with approval the Eighth Circuit's decision in *Fast,* and has arguably endorsed the 20 percent limitation on non-tip-producing activities. *See Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1284 (10th Cir. 2017). Ultimately, the Circuit in *Romero* remanded to the district court the issue of whether the defendant was entitled to treat the plaintiff's tips as "wages," including the plaintiff's argument that the defendant was not entitled to rely on the tip credit for those hours in excess of 20 percent of her work week that she spent performing non-tip-producing activities. *See id*. at 1283. On remand in *Romero*, the district court rejected the defendant's argument that it should disregard the FOH and, instead, followed the *Fast* decision and gave *Auer* deference to the FOH. *Romero v. Top-Tier Colorado LLC*, 274 F. Supp. 3d 1200, 1205-06 (D. Colo. June 2, 2017).

Like the district court in *Romero* (and the vast majority of district courts that have decided the issue), the court here finds *Fast* persuasive and adopts its reasoning. Specifically, the court agrees with *Fast* that the dual jobs regulation is ambiguous in that the regulation, by using language like "occasionally" and "part of [the] time," "clearly places a temporal limit on the

amount of related duties an employee can perform and still be considered to be engaged in the tip-producing occupation," but it does not define the specific contours of that limit. 29 C.F.R. § 531.56(e); *Fast*, 638 F.3d at 879-80. Moreover, the court agrees with *Fast*'s finding that the FOH is not plainly erroneous or inconsistent with the regulation. *See id.* at 880-81. By concluding that an employer may not take the tip credit if an employee spends more than twenty percent of his or her time in related but non-tipped work, the FOH places a reasonable temporal limit on the amount of such work that a tipped employee can perform before he or she must receive the full minimum wage. *See id.* at 881 (noting that "[t]he DOL has used a 20 percent threshold to delineate the line between substantial and nonsubstantial work in various contexts within the FLSA"). Ultimately, this court will defer to the FOH and holds that defendants may not take the tip credit when a server spends more than 20 percent of his or her work week performing non-tip-producing tasks. *See Alverson v. BL Restaurant Operations LLC*, 2018 WL 1618341, at *3 (W.D. Tex. Apr. 3, 2018) (rejecting *Marsh* and following *Fast*); *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 766-67 (D.S.C. Oct. 25, 2017) (rejecting *Marsh* and following *Fast)*; *Osman v. Grube, Inc.*, 2017 WL 2908864, at *4 (N.D. Ohio, July 7, 2017) (following *Fast)*; *Flood v Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 582 (S.D.N.Y. 2015) (following *Fast)*; *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008 (N.D. Ill. 2012) (following *Fast)*. Defendants' motion for partial summary judgment is denied.

*Conditional Certification*

Having denied defendants' motion for partial summary judgment, the court turns to the remainder of plaintiff's motion for conditional certification. Plaintiff asks the court to certify a

class composed of all current and former servers of Firebirds International, Inc. who worked for defendants any time from May 12, 2014 (three years prior to the filing of the complaint) to the present.[3] Section 216(b) of the Fair Labor Standards Act of 1938 provides for an opt-in collective action where the complaining employees are "similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of § 216(b). *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." *See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). For conditional certification at the "notice stage," a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). The standard for certification at the notice stage, then, is a lenient one. *See id*. at 1103. At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are "similarly

---

[3] In his request for relief, plaintiff initially included "bartenders" in his proposed class. Defendants objected to the inclusion of bartenders and plaintiff has withdrawn that request in his reply. The court also notes that the proposed class in plaintiff's request for relief is different from the class definition included in plaintiff's amended complaint, which excludes servers from Nevada and California. Finally, any class definition must obviously exclude servers employed in states that do not permit use of the tip credit. The parties are directed to meet and confer regarding an appropriate class definition and to seek the court's guidance if they cannot come to an agreement.

9

situated" using a stricter standard. *Id.* at 1102–03. During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; and fairness and procedural considerations. *Id.* at 1103.

In this case, defendants contend that the court should not apply the lenient "notice stage" standard in reviewing plaintiff's motion because the parties have engaged in six months of certification discovery. According to defendants, the court should apply a "heightened burden" requiring plaintiff to come forward not only with substantial allegations of a uniform policy or plan but a sufficient factual basis crediting those allegations. As it has done consistently in cases at this stage of the litigation (in which no scheduling order concerning merits discovery has been entered and no trial date has been set), the court rejects the invitation to bypass the first-stage certification standard in this case in favor of an intermediate level of scrutiny. *See In re Bank of America Wage & Hour Employment Lit*., 286 F.R.D. 572, 577 (D. Kan. 2012); *Wass v. NPC Int'l, Inc.,* 2011 WL 1118774, at *3 (D. Kan. Mar. 28, 2011); *Braun v. Superior Indus. Int'l, Inc*., 2010 WL 3879498, at *1 (D. Kan. Sept. 28, 2010); *Garcia v. Tyson Foods, Inc*., 255 F.R.D. 678, 686 (D. Kan. 2009).

In support of his motion, plaintiff has come forward with evidence that defendants, on a nationwide basis in states that permit use of the tip credit, pay their servers solely at the tip credit rate and that servers are never paid at the full minimum wage rate regardless of how much time servers spend performing non-tip-producing tasks. Plaintiff's evidence demonstrates that the decision to pay servers at the tip credit rate was made at the corporate level. All servers are required to perform "side work" during their shifts, though the amount and nature of that side

work varies by location and is somewhat dependent on the preferences of an individual manager. While this evidence is disputed, plaintiff has come forward with some evidence suggesting that plaintiff has spent more than 20 percent of his time at work not engaged in tip-producing activities and has been wrongfully compensated for that time at a sub-minimum wage. At the corporate level, defendants do not track the amount of time that servers spend on "side work" or non-tip-producing activities and defendants do not require individual restaurant managers to track that information. Lastly, all servers' customer transactions (such as food and drink orders) are recorded on a uniform Point of Sale System, the same system that servers use to clock in and out. That system shows how many tables of customers a server served during each shift. According to plaintiff, data pulled from the uniform Point of Sale System shows the total percentage of time that a server spends with no active customers in the restaurant which permits an inference that other time is spent performing non-tip-producing activities.

Defendants oppose certification of the class, arguing that plaintiff has not sufficiently shown that the putative class members are similarly situated to him. Specifically, defendant asserts that plaintiff's evidence fails to show the existence of a single policy or plan that applies to all putative class members in light of evidence that side work was assigned by individual managers at individual restaurant locations. Defendant further contends that each server's experience varies from the next in terms of how much time he or she spent performing non-tip-producing activities such that "individualized discovery" would render the class unmanageable. In the alternative, defendants contend that certification should be limited to those servers employed at defendants' Overland Park location during the applicable statutory period. Bearing in mind the lenient standard for conditional certification, these arguments are rejected.

Plaintiff's evidence demonstrates that defendants always claim a tip credit for all servers at all locations regardless of how much time a server spends performing non-tip-producing activities; that defendants do not track at any location how much time servers spend performing non-tip-producing activities; that all servers nationwide are assigned the same or similar side work activities as part of their shifts; that the Point of Sale system is a uniform system that arguably reflects how much time servers spend on tip-producing activities; and that plaintiff was paid at the tip credit rate despite spending more than 20 percent of his time on non-tip-producing activities. While the court appreciates that variations may exist in terms of the amount and nature of side work assigned to servers, those variations are not significant to the court at this stage of its analysis. *See In re Bank of America Wage & Hour Employment Lit.*, 286 F.R.D. 572, 586 (D. Kan. 2012). And while defendants may ultimately prevail on their argument that servers simply do not spend more than 20 percent of their time performing non-tip-producing activities, that argument does not preclude conditional certification and constitutes a factual dispute better suited to further analysis at the second stage of certification. *See Wass v. NPC Int'l, Inc.*, 2011 WL 1118774, at *5-6 (D. Kan. Mar. 28, 2011) (existence of contrary evidence, including declarations by other employees indicating that no FLSA violations existed, were not relevant at first stage of certification).

In short, the court concludes that plaintiff has met his burden to show that this collective action should be certified for purposes of sending notice of the action to potential class members. The court grants conditional certification of a nationwide class of servers who were paid at the tip credit rate. *See Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 764 (D.S.C. 2017) (granting conditional certification of nationwide class of servers claiming violation of dual jobs

regulation and 20 percent rule where all servers were required to do side work that "potentially" caused FLSA violations; disregarding defendants' declarations from employees disputing plaintiff's claims in light of conditional stage); *Osman v. Grube, Inc.*, 2017 WL 2908864, at *6 (N.D. Ohio July 7, 2017) (granting conditional certification of class of servers at twenty franchise locations where evidence supported theory that servers at four locations spent a substantial amount of time performing non-tip-producing tasks but were not compensated at the minimum wage for that time); *Gunn v. NPC Int'l, Inc.*, 2016 WL 7223466, at *4-6 (W.D. Tenn. Dec. 13, 2016) (granting conditional certification of collective action alleging that Pizza Hut servers in 8 states performed side work in excess of 20 percent of time at sub-minimum pay); *Robbins v. Blazin Wings, Inc.*, 2016 WL 1068201, at *6-7 (W.D.N.Y. March 18, 2016) (granting conditional certification of nationwide class of servers employed at 465 restaurants based on affidavits from servers employed at 11 different locations showing that servers were regularly required to perform non-tip-producing tasks at sub-minimum pay); *Cope v. Let's Eat Out, Inc.*, 2016 WL 10677886, at *3 (W.D. Mo. 2016) (granting conditional certification of class of tipped employees where evidence showed that same employment policies were in place at all restaurant locations and that employees often spent more than 20 percent of their time on non-tipped work but were not paid minimum wage for that time); *Fast v. Applebee's Int'l, Inc.,* 243 F.R.D. 360, 362-63 (W.D. Mo. 2007) (granting conditional certification of class of tipped employees despite evidence that each restaurant's manager assigns side work independently where employees performed same duties and were subject to same policies).

*Proposed Notice Plan*

13

Plaintiff has submitted a proposed notice and consent-to-join form with his motion for conditional certification and has described to the court his proposed plan to disseminate the notice and consent forms. According to plaintiff, he intends to send the notice to putative class members through regular first-class mail as well as through electronic mail. Plaintiff further proposes sending "reminder" notices through regular and electronic mail 30 days prior to the close of the opt-in period and again 15 days prior to the close of the opt-in period. Plaintiff also intends to have defendants post the notice at defendants' restaurants. To facilitate plaintiff in disseminating notice to the putative class, plaintiff asserts that the court should require defendants to produce to plaintiff the names, telephone numbers, last known addresses, email addresses and social security numbers of putative class members. The proposed notice and consent-to-join form submitted by plaintiff contemplate that the form will be completed, signed, and returned by regular mail.[4]

Defendants have raised several objections to plaintiff's notice plan, including that sending notice via email (in addition to regular mail) is excessive and unworkable; that plaintiff's proposed "reminder" notices are excessive; that plaintiff's proposed "posting" of the notice at defendants' restaurants is not warranted; and that defendants should not be required to produce email addresses or phone numbers for putative class members.[5] In his reply brief, plaintiff requests that the court

---

[4] In his reply brief, plaintiff urges that putative class members should be able to execute and submit consent-to-join forms electronically and that the court should overrule defendants' objection to that approach. But defendants have made no such objection because electronic execution and submission of consent forms is not contemplated by the notice and form submitted by plaintiff and is not mentioned in plaintiff's motion. To the extent plaintiff wants putative class members to execute and submit consent forms electronically, he should raise this issue with defendants in the first instance.

[5] Defendants also assert that they should not be required to produce social security numbers or birth dates for putative class members. It is unclear to the court whether plaintiff is requesting that information. While that information is mentioned in plaintiff's motion in the context of

deny defendants' objections without prejudice to reasserting those objections after the parties have had an opportunity to meet and confer in good faith in an attempt to reach agreement on the form and substance of the notice. Defendants agree that the parties should meet and confer about the substance of the notice itself and the particulars of the dissemination plan, but assert that the court should rule on defendants' objections in the first instance to assist the parties in reaching an agreement.

The court agrees with defendants that a resolution of defendants' objections at this stage will promote efficiency in terms of finalizing the ultimate notice and dissemination plan. Plaintiff does not suggest that he anticipates difficulties contacting putative class members such that email notification above and beyond written notice mailed to the home addresses of putative class members might be necessary. *See Fenley v. Wood Group Mustang, Inc*., 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016) (general rule is that notice is typically sent by a single method absent some showing that additional method will ensure receipt of notice). Moreover, even if the court was inclined to authorize email notification, defendants have represented to the court that they do not maintain email addresses for current or former employees. Thus, requiring defendants to produce email addresses would cast an undue (if not impossible) burden on defendants. The court also agrees with defendants that two reminders during the notice period is excessive and could be interpreted as encouragement by the court to join the litigation. *See Landry v. Swire Oilfield Servs*., LLC, 252 F. Supp. 3d 1079, 1130 (D.N.M. 2017). Nonetheless, the court is inclined to

---

discussing other cases, that information is not requested by plaintiff in the formal request at the end of his motion in which he delineates the specific contours of his request. The parties, then, should meet and confer about these issues.

conclude that one reminder during the notice period aimed only that those putative class members who have not responded to the notice serves the FLSA's broad remedial purpose. The court will direct the parties to meet and confer with the goal of reaching agreement as to the sending of one reminder notification. Finally, the court rejects plaintiff's request to require defendants to post the notice at their restaurant locations. There is no evidence or suggestion that posting will reach a wider audience than mailing and, in fact, the potential class members reached by such posting—current employees—are the same employees for whom defendants most likely have current home address information. The only issue remaining is whether defendant should be required to produce phone numbers for putative class members. Defendants assert that they are agreeable to producing phone numbers with the understanding that such information would be utilized only to assist in a search for an unreturnable mailing via skip trace or similar method. In his reply brief, plaintiff does not address this issue at all. The court, then, assumes that plaintiff agrees to the limited use of phone numbers in this regard.

The parties, then, are directed to meet and confer about any outstanding issues relating to the class definition as well as the form and substance of the notice and notice plan and, if an agreement is reached, to submit the proposed notice and notice plan to the court for approval no later than Monday, July 2, 2018. If the parties are unable to reach an agreement, then plaintiff shall file a motion no later than Monday, July 2, 2018 seeking approval of his proposed notice and notice plan. Defendants shall then file their objections to plaintiff's proposed notice or notice plan no later than Friday, July 13, 2018.

*Statute of Limitations*

16

Unlike Rule 23 class actions, the commencement of an FLSA collective action does not toll the statute of limitations for putative class members. 29 U.S.C. § 256(b). Thus, absent an order from the court tolling the applicable statute of limitations period, the limitations period for each putative member of the class would be three years (assuming the allegation of a willful violation of the statute) prior to the date he or she opted into the action. *Id*. §§ 255(a), 256(b). The statute, in other words, contains a look-back provision which limits to three years from opt-in how far back a plaintiff can look to find violations by his or her employer. *In re Bank of America Wage & Hour Employment Lit.*, 2010 WL 4180530, at *2 (D. Kan. 2010). In his request for relief, plaintiff asks the court to toll the statute of limitations period for putative class members from the date of the filing of plaintiff's motion for conditional certification until the close of the opt-in period. Defendants oppose this request on the grounds that plaintiff has not alleged "active deception" or any other facts that might support a request for equitable tolling of the limitations period. Plaintiff does not mention the issue at all in his reply brief.

The Tenth Circuit generally applies in single-plaintiff cases a very high standard in determining whether to equitably toll the limitations period—reviewing for circumstances rising to the level of "active deception." *Impact Energy Resources, LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012). The Circuit, however, has never examined the issue of equitable tolling in the context of a nationwide FLSA collective action. The court, then, rejects the suggestion that "active deception" is required for equitable tolling in the context presented here. But in the absence of any briefing on the issue from plaintiff, the court declines to grant automatic "blanket" tolling for individuals who are not yet parties to the case. *See Richert v. LaBelle HomeHealth Care Serv. LLC*, 2017 WL 4349084, at *6-7 (S.D. Ohio Sept. 29, 2017) (denying without

17

prejudice motion for equitable tolling in FLSA collective action where plaintiff presented no specific information about the circumstances of potential opt-in plaintiffs; motion for equitable tolling purporting to seek relief on behalf of individuals who had not yet appeared was premature); *Koehler v. Freightquote.com, Inc*., 93 F. Supp. 3d 1257, 1267-68 (D. Kan. 2015) (delaying decision on whether to toll statute of limitations until the close of opt-in period, upon renewed motion by plaintiffs, when court would have information from which it could determine reasonable diligence); *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) & Wage & Hour Litig*., 2014 WL 3695750, at *3 (W.D. Ky. July 24, 2014) (holding that it was premature to grant "blanket" equitable tolling for hypothetical plaintiffs where court did not possess knowledge sufficient to establish the diligence of putative class members).[6] Plaintiff may renew his request for equitable tolling at a later date if he believes the circumstances so warrant.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for conditional certification (doc. 39) is granted in part and denied in part as described herein and defendants' motion for partial summary judgment (doc. 42) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties are directed to meet and confer about the form and substance of the notice and, if an agreement is reached, to submit the proposed notice to the court for approval no later than **Monday, July 2, 2018**. If the parties

---

[6] While this court granted "blanket" equitable tolling in the Bank of America multidistrict litigation, the facts presented in that case were distinguishable in that the plaintiffs in a related action had been granted tolling prior to consolidation and the issue was exhaustively briefed by all parties.


are unable to reach an agreement, then plaintiff shall file a motion no later than **Monday, July 2, 2018** seeking approval of his proposed notice. Defendants shall then file their objections to plaintiff's proposed notice and submit an alternate proposed notice no later than **Friday, July 13, 2018**.

**IT IS SO ORDERED.**

Dated this 18th day of June, 2018, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge