# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JOSHUA NOLEN, on behalf of himself** | ) | |
| **and all others similarly situated,** | ) | |
| | ) | **Case No. 2:17-cv-02237-JWL-JPO** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CLASS ACTION** |
| | ) | **COLLECTIVE ACTION** |
| **FIREBIRDS OF OVERLAND PARK,** | ) | |
| **L.L.C. and FIREBIRDS** | ) | |
| **INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>PRELIMINARY SETTLEMENT APPROVAL</u>

The parties have reached an agreement to settle this case. The settlement is fair, reasonable and beneficial to the class members and should be readily approved. The settlement creates a common fund of $2,500,000 covering approximately 7,050 Plaintiffs who worked for Defendants as servers at Firebirds restaurants across the country (collectively, "Plaintiffs," "the Class," or "Class members"). The Settlement terms call for a "hybrid" opt-in Settlement under the Fair Labor Standards Act and opt-out Settlement pursuant to Fed. R. Civ. P. 23 for allegations pertaining to state wage law claims. Every single class member who does not opt out of the settlement will receive a payment.

The approximately 7,050 total Plaintiffs will receive notice of their right to participate in the settlement and their net share of the settlement proceeds. The settlement results in a projected average gross recovery of over $350.00 per class member with individuals who worked the entire class period to receive more than three times the average. Each class member will receive notice that provides his or her estimated net recovery so that all putative class members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Firebirds.

I.     **Facts and Procedural History**

The Named Plaintiff Joshua Nolen brought a lawsuit under state and federal wage law for alleged improperly paid wages while working as a server at a Firebirds restaurant. Defendants removed the matter to federal court, and Plaintiff amended his petition to assert hybrid claims under the FLSA and state wage laws on behalf of a putative class consisting of Defendants' current and former servers at Firebirds restaurants nationwide. The discovery, conducted over a year, included depositions; a review of tens of thousands of documents, including years of time and pay records and restaurant sales logs; interrogatories; and other discovery. Plaintiffs applied for nationwide conditional certification. Contemporaneously, Defendants sought summary adjudication of the Plaintiffs' claims on application of the 80/20 rule. The Court certified this matter as a nationwide collective action and ordered that notice be disseminated to the class. Defendant requested interlocutory appeal, which this Court denied. The Plaintiffs were on the precipice of issuing notices to the class members, when the parties requested a brief stay to explore the possibility of classwide resolution of the matter.

After the exchange of hundreds of thousands of payroll and computer records, and after having engaged in expert analysis, the parties conducted a mediation with nationally-renown mediator, and former U.S. Magistrate Judge Diane Welsh in Philadelphia. After weeks of pre-negotiation work between counsel, and a full day of in-person negotiations, the parties were able to reach an accord that summarized the basic terms of this settlement.

Named Plaintiff and class counsel believe the claims asserted in the Litigation have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and counsel, however, also recognize the risk and expense of trying and, if necessary, appealing a complex case like this action, and believe that the Settlement confers substantial benefits upon the class

3

members. Defendant denies Plaintiffs' claims have any merit and deny any wrongdoing, but wish to avoid the uncertainty and risk attendant with further litigation.

The main terms of the agreement are as follows:

- The settlement creates and makes available a common fund of $2.5 Million to settle the claims of the approximately 7,050 class members;

- Detailed notices will be provided to class members after preliminary approval of settlement apprising class members of, among others:

  - their individual settlement amounts,
  - their right to opt out of the settlement if they so wish,
  - and the procedure for claiming monies;

- Non-named settling Plaintiffs will only release wage and hour claims arising out of their work as servers at a Firebirds restaurant;

- Attorneys' fees will comprise one-third of the fund;

- Costs will total approximately $24,008.00;

- Settlement administration costs will not exceed $100,000;

- The Named Plaintiff and the Early Opt in will receive a service award of $15,000 for the service that they provided during the litigation, and in exchange for a general release of all claims.

The settlement agreement is attached as Exhibit 1.

## II.      Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends contested litigation prior to trial?

## III.     Argument

### A.      Approval of the Opt-Out Class Settlement

FRCP 23(e) requires a Court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); ; *Officers for Justice v. Civil*

4

*Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004) (noting "the universally applied standard is whether the settlement is fair, adequate and reasonable"). Whether a settlement warrants approval is within the trial court's sound discretion, *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In making this determination, the Court considers "the settlement, taken as a whole," rather than its component parts. *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1333 (E.D. Mo. 1995) ("[I]t has been recognized that 'the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002). During the first step, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the settlement does not contain obvious deficiencies or grounds to doubt its fairness, the Court should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to final approval of the settlement (the second step). *See* Manual § 21.633. At the preliminary stage, the question is "whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

"Courts considering [class action] settlements do so in light of the strong presumption of favoring compromise of disputes generally, but which "is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *1-2 (D. Kan. Oct. 26, 2012), quoting *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1188 (10th Cir. 2002). More importantly, however, is that there are no "obvious deficiencies" in the fairness of this settlement, or other reasons to doubt it will meet the Tenth Circuit's requirements for final approval. See *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (quoting Manual for Complex Litigation (Third) § 30.41 (1994)).

### 1.      The Proposed Settlement Enjoys an Initial Presumption of Fairness

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources

can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions§ 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

### 2. Analysis of the Applicable Factors Favors the Settlement

Before approving a settlement, the Tenth Circuit requires courts to consider the following four factors:

(1) Whether the proposed settlement was fairly and honestly negotiated;

(2) Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) The judgment of the parties that the settlement is fair and reasonable.

*Hersey*, 2012 WL 5306260, at *1 (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)); *Jones*, 741 F.2d at 324; *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002). Because the parties' settlement of this Litigation satisfies each of the four prerequisites, the Plaintiffs respectfully ask the Court to preliminarily approve the Rule 23 settlement and permit notice to be sent to the Class.

**1. The settlement was fairly and honestly negotiated.**

"The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist*., Civil No. 05-cdv01567-WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (unpublished) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)). The settlement was honestly and fairly negotiated by competent counsel, and involved the assistance of an experienced labor and employment lawyer who served as a mediator. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

The Plaintiffs' lead counsel in this case is a highly-experienced wage and hour class action litigator who has prosecuted dozens of wage and hour and class action cases, including a similar case in this Court and others. See *Husein v. Bravo Brio Restaurant Group*., Case No. 4:16-cv-

00435 (W.D. Mo.); *Greenstein v. Meredith Corp.*, 948 F. Supp. 2d 1266, 1268 (D. Kan. 2013). Lead counsel for the defense are also highly-experienced wage and hour litigators, who have defended dozens of class and collective actions in state and federal courts throughout the country.

With the guidance and expertise of Diane Welsh, a former United States Magistrate Judge, and a nationally-renowned mediator for large, complex mediations, the parties negotiated for more than 7 hours. These factors weigh heavily in favor of approval. The Class's counsel believe the settlement provides substantial benefits to the Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Furthermore, when compared with similar litigation, the relief to the class is substantial. Moreover, Firebirds obviously believes the settlement is fair and reasonable, as evidenced by the amount of the common fund and its interest in extinguishing wage claims for time worked throughout the workday.

### 2.   There are serious questions of law and fact that affect the outcome of the litigation.

The parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. See *Lucas v. Kmart Corp*, 234 F.R.D. 693-694 (D. Colo. 2006); *Ashley v. Reg'l Transp. Dist.*, No.05-CV-01567-WYD-BNB, 2008 WL 384579, at * 18 (D. Colo. Feb 11, 2008) ("doubt augurs in favor settlement because settlement creates a certainty of some recovery" (quoting *In re Qwest Int'l, Inc. Sec. Litig.*, Civil Case No. 01-cv-01451-REB-CBS, et al., 2006 U.S. Dist. LEXIS 71039, at *16-*17 (D. Colo. Sept. 28, 2006) (unpublished)). The risk of an adverse finding against the Class is significant. Firebirds was prepared to oppose Rule 23 certification and raise numerous arguments concerning the propriety of their practices regarding payment for time worked. And, Plaintiffs faced the risk that the Department of Labor's 80/20 Rule

9

might be invalidated in this or another litigation. Consequently, this was a difficult case with many issues that could have resulted in adverse outcomes for the Class. For example, claims that employees worked improperly paid time have been tried to juries with mixed results. See e.g., *Guyton v. Tyson Foods, Inc.*, No. 3:07-cv-00088 (S.D. Iowa) (Doc. 330, defense verdict 4/25/12); *Lopez v. Tyson Foods, Inc.*, No. 8:06-cv-00459 (D. Neb.) (Doc. 372, defense verdict 5/26/11). Thus, settlement is favored as to the uncertainty of a jury.

### 3. The value of immediate recovery outweighs the possibility of relief years from now.

The monetary value of the settlement must be compared with "the possibility of some greater relief at a later time, taking into account the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other ground by *Devlin v. Scardelleti*, 536 U.S. 1 (2002). When weighed against the potential relief gained, and the expense of the litigation, the $2,500,000 common fund is more than sufficient. A settlement in excess of a million dollars for a case that would be litigated for several more years is satisfactory. See, e.g., *Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1273 (D. Kan. 2012) (involving five years of litigation through trial and another two years on appeal). When, viewed in light of the mixed results in wage and hour cases, this is particularly true. Furthermore, even if there were a trial, there is no certainty the Class would have achieved a positive outcome. For this very reason, most class actions settle. As one court aptly observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and quotations omitted).

If the parties had not settled, this matter would have proceeded through Rule 23 class certification involving 43 restaurants spread out over 19 states, significant discovery, multiple dispositive motions, and likely motions for decertification. Whatever remained of the action would

10

have been tried on the merits. If the Court did not certify a class, subsequently decertified a class, or granted summary judgment in Firebirds' favor, Class members would recover nothing. And, even if the case proceeded to trial, substantial legal questions and complicated factual issues affecting potential recovery by Plaintiffs and Class members would have required resolution. The uncertain disposition of the Litigation, as well as these unresolved questions, created substantial complexity and concordant risk for the Plaintiffs and the class, thus weighing in favor of recovery as guaranteed by the parties' proposed settlement.

**4. Counsel believe the settlement is fair and reasonable.**

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)).

The parties reached this settlement after arms-length negotiations; both "genuinely believe" it represents a good outcome for all parties. *In re Sprint*, 443 F. Supp. 2d at 1261. Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. Likewise, the Defendant retained experienced counsel that could successfully navigate complex litigation in the wage and hour context.

Against this background, counsels' opinion "is entitled considerable weight" and supports approval of the settlement. See *Ashley*, 2008 U.S. Dist. LEXIS 13069, at *21 (quoting *Lucas*, 234 F.R.D. at 695); *Marcus*, 209 F. Supp. 2d at 1182-83.

### 5. The Opinions of Class Members

Although at this preliminary stage, notice and opportunities to accept or otherwise respond to the settlement have not been provided to class members, the proposed settlement has been communicated to and accepted and approved by the Named Plaintiff and Early Opt in Importantly, each class member who does not exclude themselves from the settlement will receive payment, regardless of whether they choose to submit a claim form. All class members will have the right to exclude themselves from the settlement if they choose. Thus, the settlement allows for class members to opt out if they do not like the settlement.

### B.     Approval of the FLSA Class Settlement

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). This settlement satisfies the FLSA's relaxed standard for settlement approval (vis-à-vis the more stringent Rule 23 standard). And because the parties' settlement meets the Rule 23 standard, it should easily clear the FLSA hurdle.

One only need to look as far as the recent Tyson Foods cases to determine this case involves a bona fide dispute. See *Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1273 (D. Kan. 2012)

(plaintiff's verdict after many years of litigation and three-week trial); *Guyton v. Tyson Foods, Inc.*, No. 3:07-cv-00088 (S.D. Iowa) (Doc. 330, defense verdict 4/25/12); *Lopez v. Tyson Foods, Inc.*, No. 8:06-cv-00459 (D. Neb.) (Doc. 372, defense verdict 5/26/11).

Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel and provides meaningful, significant, monetary relief to all party Plaintiffs. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was contested and settled only after significant, intensive discovery, data analysis and shuttle diplomacy via the mediation process. And only then were the parties able to

reach an accord with the help of a nationally-recognized mediator and retired United States Magistrate Judge. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt.

The settlement offers a significant payment to the Plaintiffs and participating class members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of time worked in a covered position. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals. Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, Plaintiffs respectfully request that the Court approve the settlement and order that the Plaintiffs and the Participating Class Members be paid in accordance with the terms of the settlement agreement. A proposed order granting settlement approval is attached as Exhibit 1.

## IV.   The Court Should Approve the Requested Service Payments

Plaintiffs seek service payments for the named Plaintiff and early opt in ("Named Plaintiffs") who provided invaluable service to the group, totaling 1% of the total settlement fund.

These services provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole. The Named Plaintiff and early opt in request an award of $15,000 each in recognition of their service to the class as a whole through litigation, as well as in consideration for their general release of all claims against the Defendant. Named Plaintiff worked with Class Counsel before and throughout this litigation in pursuing these claims on behalf of class members, including appearing for a deposition, providing statements and affidavits, and attending mediations. The Named Plaintiff and early opt-in are also releasing all claims—not just wage and hour claims.

The reason for this service awards, in addition to the general release, is to ensure that those individuals, who chose to participate and provided invaluable information about Firebirds, its policies, procedures, and information regarding the Defendant, are compensated for the risk that they undertook in bringing this action. The Named Plaintiffs should be rewarded to encourage others who would be subject to future FLSA violations to assert their rights to fair pay under federal wage law.

Under the Settlement Agreement, the requested service payments constitute 1% of the settlement amount. Additionally, the Named Plaintiff took a risk by joining the litigation. He will forever be subject to background checks on employment applications, and there is risk that if an employer learns of their previous litigation, it may be less likely to hire them. In light of the small percentage of the settlement fund that the monies represent, Plaintiff respectfully requests that the service payments be approved.

Courts recognized that the risk, time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving. *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL

15

5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Flores v. Anjost Corp.*, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation).

Accordingly, Plaintiffs' request falls within a fair range of service awards – especially considering that they are releasing any and all claims against Firebirds.

## V.      Plaintiffs' Application for Fees & Expenses Should be Approved

As part of the settlement, Plaintiffs request one-third of the Settlement Fund for payment as attorneys' fees in addition to reasonable and necessary expenses in the amount of approximately $24,960.63[1], and Defendant agrees not to oppose such request. Such fees and expenses are

---

[1]      Plaintiffs will provide the final expense amount in connection with their motion for final settlement approval.

NY 247736743v3

reasonable.

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so because Defendant has agreed that it will not oppose up to one-third of the Settlement Fund as attorneys' fees. The Parties in this matter have also agreed to a common fund settlement.

When, as here, a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenso*n, 465 U.S. 886, 900 n.16 (1984).[2] This Court has recognized attorney fees are appropriately awarded from a class action settlement fund, "on the theory 'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.' " See *In re: Urethene Antitrust Litigation*, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Importantly, all Class members who willingly choose to

---

[2]    Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-ofthe-recovery method. Second, it rewards efficiency, and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery. *See In re Xcel Energy*, 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the Court by the "lodestar" method, and assures class members do not experience undue delay in receiving their share of the settlement. Courts have recognized using a percent of the fund approach most closely aligns the interests of the lawyers with the class because the greater the recovery, the more the attorneys may receive in fees. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting the percentage of the benefit approach has been recommended in common fund situations).

17

participate will do so (1) after they are informed via the Court's approved notice that one-third of the common fund will be paid as fees, and (2) with the opportunity to object to the requested fees. "The Tenth Circuit has expressed a preference for the percentage-of-the-fund method of awarding attorney fees in common fund cases." Id. (citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995)).

> When setting percentage fee awards in common fund cases, the Tenth Circuit has endorsed the use of the following 12, so-called, Johnson factors: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* "[R]arely are all of the Johnson factors applicable; this is particularly so in a common fund situation." *Id.* "The most important factor in this case is undoubtedly the amount involved and the results obtained." *Id.* The Johnson factors support the fee request:

1. Plaintiffs' counsel have worked on the Litigation for more than one year and have dedicated attorney and staff resources to the Litigation. Upon request, Plaintiffs' counsel will provide their lodestar in conjunction with the Plaintiffs motion for final approval.

2. This case is a hybrid class and collective action involving multiple defendants, laws, and facilities. As the Court is no doubt aware, the hard costs alone of bringing such a case to trial can easily exceed a million dollars.

3. This Court has implied it takes a reasonably high level of skill in prosecuting similar cases.

4. Plaintiffs' counsel are not at large firms, and have rejected other, potential cases due, in part, to prosecuting this case.

5. Fees of one-third of the fund are commonly awarded.

6. In his representation agreement, Plaintiff Nolen agreed to pay, as attorneys' fees, 40% of his recovery. As a result, the requested fee percentage is below that agreed to and

NY 247736743v3

which represents what a lawyer can reasonably obtain from a client. Similarly, all class members choosing to participate are informed that Class Counsel will receive one-third of the fund. If the class member does not like the deal, then he or she can opt out and attempt to hire another lawyer to prosecute his or her case at a lower rate. Although Firebirds believes its practices and procedures fully complied with the law relating to the 80/20 rule generally as well as related record keeping matters, since this litigation was filed, it further enhanced its policies, procedures, and record keeping to further ensure compliance with all requirements of federal and state law. The Court should consider this in determining the value provide to the Class.

7. The case was settled after extensive, hard-fought litigation including dispositive motions and motions for class certification, and then only after the exchange of extremely voluminous data and electronic information that was subsequently analyzed by a P.H.D. statistician.

8. Per Class member, the amounts of non-tip-producing time time was relatively modest, and thus it was necessary to aggregate damages to facilitate resolution. The settlement does well to compensate the Class for relatively limited amounts of time. The recoveries meet, or exceed, those obtained in other, similar cases.

9. Plaintiffs' lead counsel has prosecuted dozens of wage and hour and class action cases. Notably, the Plaintiffs' lead counsel has presented at the National American Bar Association annual conference on ADR and mediations in the class action context, as well as regional conferences on wage and hour litigation, and is routinely selected for Best of the Bar and Super Lawyers.

10. The case was neither desirable, nor undesirable.

11. This is the first time Plaintiffs attorney represented Plaintiffs.

12. In class actions, courts routinely award one-third of a common fund as attorneys' fees. Furthermore, the amount of the fee is actually less than similar class actions involving comparable, or lower, recoveries.

Courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July

19

14, 2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, Docs. 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Brown v. Time Warner Cable, Inc.,* Case no. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D. Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Burks*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p.2 & Doc. 38, p.4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *EEOC v. Fairbault Foods, Inc.,* Civ. No. 07-3976, 2008 WL 879999, at *4, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 WL 2671105, at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

Finally, Plaintiffs' out-of-pocket costs, which are primarily data analysis, discovery review, mediation expenses and court fees, are reasonable. Indeed, they are roughly $24,007.00 and compromise very little of the common fund.

## CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court approve the settlement as provided in Exhibit 1, in whole and without delay.

Respectfully submitted,

**THE HODGSON LAW FIRM, LLC**

*/s/ Michael Hodgson*
Michael Hodgson, KS Bar No. 21331
3699 SW Pryor Rd
Lee's Summit, MO 64082
mike@thehodgsonlawfirm.com
Tel: (816) 600.0117

Phillip M. Murphy, II, Esq.
**Law Office of Phillip M.**
**Murphy, II** 4717 Grand
Avenue, Suite 250 Kansas City,
MO  64112
913-661-2900
Fax:  913-312-5841
Phillip@phillipmurphylaw.com

ATTORNEYS FOR PLAINTIFFS
AND THE CLASS

NY 247736743v3

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed using the Court's CM/ECF system, which sent electronic notification of the same this 18th day of December, 2018 to:

**GREENBERG TRAURIG**

JONATHAN SULDS
Metlife Building
200 Park Ave.
New York, NY 10166
Tel. No. (212) 801-6882
Fax No. (212) 801-6400
suldsj@gtlaw.com

JUSTIN KEITH
One International Place, Suite 2000
Boston, MA  02110
Tel. No. (617) 310-6230
Fax No. (617) 897-0930
keithj@gtlaw.com

**POLSINELLI, P.C.**

ROBERT J. HINGULA (KS #22203)
KATHARINE SANGHA (KS #26232)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Tel. No. (816) 753-1000
Fax No.: (816) 753-1536
rhingula@polsinelli.com
ksangha@polsinelli.com

ATTORNEYS FOR DEFENDANTS

/s/Michael Hodgson
Attorney for Plaintiffs

NY 247736743v3