# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JOSHUA NOLEN, on behalf of himself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 2:17-cv-02237-HLT-JPO** |
| **v.** | ) ) | **CLASS ACTION** |
| **FIREBIRDS OF OVERLAND PARK, L.L.C. and FIREBIRDS INTERNATIONAL, INC.,** | ) ) ) ) | **COLLECTIVE ACTION** |
| **Defendants.** | ) ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

The Court granted preliminary approval of the settlement and notice has been provided to the Class. The settlement has been well received by the class members and there are no objectors. Plaintiffs now request that the Court grant final approval of the settlement and end this litigation so that the class members may receive the monetary benefits provided by this settlement.

On January 3, 2019, the Court issued its Order Granting Preliminary Approval of Settlement. By that Order, the Court granted class certification for the purposes of settlement, appointed named plaintiff, Joshua Nolen as the class representative, appointed undersigned counsel as Class Counsel, and directed the parties to proceed with settlement administration according to the terms of the Settlement and the Order.

Pursuant to the Order, notice was sent to a class of approximately 7,750 class members. The deadline to return or postmark claim forms, requests for exclusion and/or to object to the settlement was April 6, 2019. The settlement has been well received:

- No objections were filed,

- No informal complaints have been made to class counsel,

- Eleven (11) individuals opted out of the settlement,

- 2,853 individuals filed a claim and will receive 100% of their settlement award;

- 4,886 class members who did not file a claim will receive 50% of their settlement award; and

- 75.76% of the Net Settlement Fund will be disbursed.

Under these circumstances – where the settlement has been so well-received – the Court should readily approve the settlement.

## I.    Facts and Procedural History

The Named Plaintiff Joshua Nolen brought a lawsuit under state and federal wage law for alleged improperly paid wages while working as a server at a Firebirds restaurant. Plaintiff sought relief on behalf of a putative class consisting of Defendant's current and former servers at Firebirds restaurants nationwide. Defendant removed the matter to federal court, and Plaintiff amended his petition to assert hybrid claims under the FLSA and state wage laws on behalf of a putative class consisting of Defendant's current and former servers at Firebirds restaurants nationwide. The discovery, conducted over a year, included depositions; a review of tens of thousands of documents, including years of time and pay records and restaurant sales logs; interrogatories; and other discovery. Plaintiffs applied for nationwide conditional certification. Contemporaneously, Defendants sought summary adjudication of the Plaintiffs' claims on application of the 80/20 rule. On June 18, 2018, the Court denied Defendants' motion for summary judgment, certified this matter as a nationwide collective action and further ordered that notice be disseminated to the class. (ECF Doc. 50). After conditional certification, Defendant requested the Court's permission to make an interlocutory appeal to the Tenth Circuit, which this Court also denied. (ECF Doc. 56).

2

The Plaintiffs were on the precipice of issuing notices to the class members, when the parties requested a brief stay to explore the possibility of class-wide resolution of the matter. The case settled at mediation after several pre-mediation discussions and a 7 hour mediation conducted by nationally-recognized mediator, and former United States Magistrate Judge Dianne Welsh in Philadelphia, Pennsylvania.

The main terms of the agreement are as follows:

- The settlement created and made available a common fund of $2.5 Million to settle the claims of the approximately 7,750 class members;

- Detailed notices were provided to class members after preliminary approval of settlement apprising class members of, among others:

  o their individual settlement amounts,
  o their right to opt out of the settlement if they so wished,
  o and the procedure for claiming monies;

- Each class member, regardless of whether he or she submitted a claim form, will receive a <u>minimum</u> of $50. Class members who timely return claim forms will receive 100% of their pro-rata allocation.

- Non-named settling Plaintiffs will only release wage and hour claims arising out of their work as servers at a Firebirds restaurant;

- Attorneys' fees will comprise one-third of the fund;

- Costs will total approximately $23,838.00;

- Current settlement administration costs are $24,025.30, with another $33,000 estimated in conjunction with settlement distribution;

- The Named Plaintiff and the Early Opt in will receive a service award of $15,000.00 for the service that they provided during the litigation, and in exchange for a general release of all claims.

The settlement agreement has been proffered to the Court as ECF Doc. No. 64-1 and was granted preliminary approval.

All class members were advised of the specific amount: 1) they would receive; 2) class

representatives receive; and 3) class counsel receive under the settlement in their claim forms. Of the approximately 7,750 Claimants who received notice, none objected to the settlement and eleven opted out. 2,853 Claimants affirmatively filed claims, and another 4,886 will recover monies under the settlement.

## II.     Question Presented

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively chose to participate, and ends contested litigation prior to trial?

## III.    Argument

### A.     Approval of the Opt-Out Class Settlement

FRCP 23(e) requires a Court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2).[1] In making this determination, the Court considers "the settlement, taken as a whole," rather than its component parts. *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1333 (E.D. Mo. 1995) ("[I]t has been recognized that 'the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

---

[1] Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002); *see also Schoenbaum v. E.I. DuPont De Nemours & Co.*, 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (*citing* Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)). If the Court is likely to approve the settlement, then it should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which objections may be heard (the second step). *See* Manual § 21.633; Rule 23(E)(1). This motion is a result of the Court's prior preliminary approval of the settlement.

judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'") (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002). The first step was completed when the Court granted preliminary approval of the settlement and ordered notice to be sent to the class. In the second, final step, the Court again determines whether the settlement is fair, reasonable, and adequate, taking into consideration the notice provided to class members and any objections raised. *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037, 2015 WL 12426091, at *6 (W.D. Mo. June 1, 2015) (finding settlement "fair, reasonable, and adequate" and granting final approval). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012). Having provided notice pursuant to the approved plan, and receiving no class member objections or complaints, the parties request that the Court grant final approval of the Rule 23 settlement.

### 1.    The Proposed Settlement Enjoys a Presumption of Fairness

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial

judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Class action settlement approval is a two-step process. At the preliminary stage, the question is "whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). As this Court recently recognized when approving the settlement of a class action: Courts considering [class action] settlements do so in light of the strong presumption of favoring compromise of disputes generally, but which "is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *1-2 (D. Kan. Oct. 26, 2012), quoting *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1188 (10th Cir. 2002). More importantly, however, is that there are no "obvious deficiencies" in the fairness of this settlement, or other reasons that would warrant denial of final approval. See *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (quoting Manual for Complex Litigation (Third) § 30.41 (1994)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions§ 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

Before approving a settlement, the Tenth Circuit requires courts to consider the following four factors:

(1) Whether the proposed settlement was fairly and honestly negotiated;

(2) Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) The judgment of the parties that the settlement is fair and reasonable.

*Hershey v. ExxonMobil Corp.*, 2012 WL 5306260, at *1 (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)); *Jones*, 741 F.2d at 324; *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Because the parties' settlement of this Litigation satisfies each of the four prerequisites, the Plaintiffs respectfully ask the Court to approve the Rule 23 settlement.

## 2.   Analysis of the Applicable Factors Favors the Settlement

In evaluating the fairness of the settlement, the Rule 23(e)(2) factors are:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Advisory Committee Notes.[2] As a result, this motion will follow the factors outlined in Rule 23(e) but will

---

[2] In considering the fairness of both Rule 23 and FLSA class settlements, courts have considered the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object [final approval stage]; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Sanderson*, 2011 WL 5822413, at *3.

then address several miscellaneous factors previously analyzed by this and other courts. Under any standard, however, the settlement is fair, reasonable, and adequate.

> **a.**      **The class representatives and class counsel have adequately represented the class.**

The class representatives and class counsel have adequately represented the class since the case was filed in 2017. First, class counsel are highly experienced in the area of wage and hour and class action litigation. Lead Counsel has prosecuted over 70 class and collective actions in his career. He has also presented seminars on wage and hour litigation at the local, regional and national levels, and has repeatedly received recognition in the community based on peer review of his practice. Here, class counsel has diligently prosecuted this case for nearly three years, handling, among other things, motions for summary judgment, discovery disputes, depositions, expert witnesses, and forensic ESI analysis through expert witnesses. Class counsel also reviewed numerous documents and types of ESI as well as communicated with numerous class members regarding the strengths and weaknesses of the case.

> **b.**      **The proposed settlement was fairly and honestly negotiated.**

The settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, Civil No. 05-cdv-01567- WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (unpublished) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)); *see also*, *Reiskin v. Reg'l Transp. Dist. Colo.*, No. 14-cv-03111-CMA-KLM, 2017 U.S. Dist. LEXIS 204242, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (finding that class settlement was fairly and honestly negotiated where "case involved intensive discovery," "expert witness reports," depositions, and "[n]umerous motions"). The settlement was honestly and fairly

negotiated by competent counsel and involved the assistance of a former United States Magistrate Judge who is considered an industry expert in class action mediations. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is a presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

The Plaintiffs' lead counsel in this case is a highly-experienced wage and hour class action litigator who has prosecuted dozens of wage and hour and class action cases, including a similar case in the Western District of Missouri against Bravo Brio Restaurant Groups. See *Husein*, *et. al. v. Bravo Brio Restaurant Group,* Case No. 16-cv-00435-DW (W.D. Mo.) Lead counsel for the defense has served as lead or co-lead in dozens of class and collection actions and on behalf of numerous Fortune 500 companies. With the guidance and expertise of Dianne Welsh, a well-respected mediator, and former United States Magistrate Judge, the parties negotiated for more than 7 hours in Philadelphia, Pennsylvania. These factors weigh heavily in favor of approval. The Class's counsel believes the settlement provides substantial benefits to the Class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Furthermore, when compared with similar litigation, the relief to the class is substantial. Moreover, Firebirds obviously believes the settlement is fair and reasonable, as evidenced by the amount of the common fund and its interest in extinguishing claims for violation of the 80/20 rule.

        **c.**         **The relief provided for the class is adequate taking into account:(i) the costs, risks, and delay of trial and appeal;(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;(iii) the terms of any proposed award of attorney's fees, including timing of payment.**

The parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. *See Lucas v. Kmart Corp*, 234 F.R.D. 693-694 (D. Colo. 2006); *Ashley v. Reg'l Transp. Dist.*, No.05-CV-01567-WYD-BNB, 2008 WL 384579, at *18 (D. Colo. Feb 11, 2008) ("doubt augurs in favor settlement because settlement creates a certainty of some recovery" (quoting *In re Qwest Int'l, Inc. Sec. Litig.,* Civil Case No. 01-cv-01451-REB-CBS, et al., 2006 U.S. Dist. LEXIS 71039, at *16-*17 (D. Colo. Sept. 28, 2006) (unpublished)). The risk of an adverse finding against the Class is significant.

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. This would likely entail bringing together dozens of witnesses for several days of testimony, at great expense to the parties and inconvenience to the witnesses. As to complexity, if the parties had not reached an accord, this matter would have proceeded through class certification phases, significant discovery, followed by multiple dispositive motions and potential motions for decertification, and eventually a trial on the merits. Were the Court inclined to not certify the class, decertify the class, or grant summary judgment to Firebirds, class members would recover nothing. Even if the case proceeded to trial, substantial legal questions affecting any potential recovery by Plaintiffs and class members remain to be resolved, including the definition of non-tip-producing activities, the extent of liability for Plaintiffs' minimum wage and tip-credit notice claims, the actual injury and entitlement of each member of the class to recover, and the measures of damages under the FLSA and state law.

Moreover, even though this Court had denied Defendant's motion for summary judgment, two weeks after the parties reached terms at the mediation, the Department of Labor issued Opinion

Letter No. FLSA2018-27, effectively calling into question the applicability of the 80/20 rule as alleged by Plaintiffs. As a result, numerous Courts are presently faced with the issue of substantive case law adopting the 80/20 rule, and at the same time, the Department of Labor retracting its former position.

The uncertain disposition of the litigation, as well as these unresolved questions, creates substantial complexity and concordant risk for Plaintiffs and the class, and thus weighs in favor of the recovery guaranteed by the proposed settlement. Settlement is favored as to the uncertainty of a jury.

> ### d. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.

The notice to class members who have not yet opted in included the right to opt in and participate in the settlement.[3] The notice provided the right to not participate, opt out or object, and was based on sample notices from the Federal Judicial Center which have been approved by this Court for use in settlement. The notice included all of the information required by Rule 23. Indeed, the notice went above and beyond those requirements and specifically informs class members of their individual settlement amount free and clear of fees and costs. And the settlement guaranteed a payment to each class member.

Further, the parties agreed that in addition to the mailing of notice, the notice allowed for electronic claims submissions for class members. Additionally, a reminder postcard was sent to class members. The claims process was easy to use as well. Individuals wishing to participate had the option of returning a self-addressed envelope visiting the claims administrator's website to

submit a claim. The notice is easy to read and provided all the necessary information and a claim was easy to submit.

      **e.**        **Any agreement required to be identified under Rule 23(e)(3).**

No such agreement exists.

      **f.**        **The value of immediate recovery outweighs the possibility of relief years from now.**

The monetary value of the settlement must be compared with "the possibility of some greater relief at a later time, taking into account the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other ground by *Devlin v. Scardelleti*, 536 U.S. 1 (2002). When weighed against the potential relief gained, and the expense of the litigation, the $2,500,000 common fund is more than sufficient.

A settlement in excess of a million dollars for a case that would be litigated for several more years is satisfactory. *See, e.g., Garcia v. Tyson Foods, Inc.,* 890 F.Supp.2d 1273 (D. Kan. 2012) (involving five years of litigation through trial and another two years on appeal). This is particularly true when viewed in light of the mixed results in wage and hour cases involving allegations of improperly-paid working time throughout the workday that was not tracked by the employer. Furthermore, even if there were a trial, there is no certainty the Class would have achieved a positive outcome, here, particularly in light of the Department of Labor's change of position. For this very reason, most class actions settle. As one court aptly observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and quotations omitted).

If the parties had not settled, this matter would have proceeded through nationwide class certification under over 20 state wages laws, significant discovery, including numerous depositions, multiple dispositive motions, and possibly motions for decertification. Whatever

remained of the action would have been tried on the merits. If the Court did not certify the Rule 23 class, subsequently decertified a class, or granted summary judgment in Firebirds' favor, Class members would recover nothing. And, even if the case proceeded to trial, substantial legal questions and complicated factual issues affecting potential recovery by Plaintiffs and Class members would have required resolution. The uncertain disposition of the Litigation, as well as these unresolved questions, created substantial complexity and concordant risk for the Plaintiffs and the class, thus weighing in favor of recovery as guaranteed by the parties' proposed settlement.

### d)    The Experience and Views of Counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)).

Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. Likewise, the Defendant retained experienced counsel that could successfully navigate complex litigation in the wage and hour context.

The litigation was at all times hard-fought. The negotiations in this case were likewise hard-fought and at arm's length. In Plaintiffs' Counsel's view, the settlement provides substantial

benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in Plaintiffs' Counsels' experience, when compared with similar litigation, the relief to the class is substantial.

**e)** **The Settlement Involves Contested Litigation of a *bona fide* Dispute.**

Because the parties intended to settle a hybrid class and collective action, Class members who submit a claim will also release their FLSA claims. The standard for court approval of FLSA claims is straightforward: a district court should approve a fair and reasonable settlement if it is reached as a result of contested litigation and resolves a *bona fide* dispute. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). This settlement satisfies the FLSA's relaxed standard for settlement approval (*vis-à-vis* the more stringent Rule 23 standard). And because the parties' settlement meets the Rule 23 standard, it should easily clear the FLSA hurdle.

First, the court must be satisfied the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must determine if the settlement involves a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Id.* Typically, as *indicia* of fairness, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms-length settlement. *Id.* When the proposed settlement reflects a reasonable compromise of contested issues, and to promote the policy of encouraging settlement of litigation, courts should ordinarily approve settlements involving FLSA claims. *Id.*

One only need to look at the DOL Opinion Letter No. FLSA2018-27 to determine this case involves a *bona fide* dispute. *See DOL OP. LTR. FLSA2018-27*. Courts across the country are

currently considering the DOL's reversal, inviting significant additional risk to already complicated, large, hybrid class and collective action litigation cases.

Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

There is no question the Litigation was contested and involved a *bona fide* dispute. The Court's docket reflects that Litigation was contested. Plaintiffs did not merely file suit as a ruse to procure the Court's approval. Instead, Firebirds answered, the parties engaged in discovery, Plaintiffs sought, and were awarded conditional class certification, Defendant sought summary adjudication of the claims, and the Plaintiffs were on the cusp of issuing notice of the lawsuit to over 7,000 putative class members when they decided to pursue early resolution. The nature of Plaintiffs' claims — *i.e.*, they worked in excess of 20% of their time engaged in non-tip-producing activities—and Firebirds' defenses (both legal and factual) rendered their dispute *bona fide*. Moreover, the contested litigation and *bona fide* dispute were only settled after 7 hours of mediation involving experienced wage and hour counsel and a respected mediator. For all of these reasons, the Plaintiffs respectfully submit this Court should conclude the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

f)     **The Opinions of Class Members**

The reaction of the Class has been unanimously, and uniquely, supportive of the settlement. As noted above, of the approximately 7,750 class members receiving notice of the settlement. 2,853 actively chose to participate, 4,886 additional class members will receive monies, none filed any objection and only 11 chose to exclude themselves.

The opinions of class members, expressed through objections, opt-outs, and silence, represent the most important "new" information available at an adjudicator's final, rather than preliminary, settlement assessment stage. But where, as here, no class members have objected or even informally complained regarding the fairness of the settlement, final approval is eminently appropriate. *See Ryskamp v. Looney*, No. 10-CV-00842-WJM-KLM, 2012 WL 3397362, at *4 (D. Colo. Aug. 14, 2012) (the existence of only a small number of objectors "weighs heavily in favor" of settlement) (citing cases); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 118 (2d Cir.2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Rambus Inc. Derivative Litig.,* No. C 06–3513, 2009 WL 166689, at *3 (N.D.Cal. Jan. 20, 2009) ("The reaction of the class to the proffered settlement ... is perhaps the most significant factor to be weighed in considering its adequacy ....") (quotation marks and brackets omitted).

The fact that no class members have objected to the settlement and only eleven Class members have opted out clearly weighs heavily, if not entirely, in favor of final settlement approval.

Even where a substantial number of class members object to or opt out of a settlement, a settlement may warrant approval. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 513–14 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 1166 (2016) (affirming final settlement approval over the objections of six of twenty-three class representatives where less than ten percent of class members had in fact opted out); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (affirming settlement

approval over the objections of nearly half of the class members, where objections were largely procedural); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226 (8th Cir. 1982) (affirming settlement approval over the written objections of 790 of approximately 3000 class members, including both named plaintiffs, noting that "[t]he vast majority approved the settlement.").

But where, as here, no class members have objected, and only 0.1% of the class chose to exclude themselves, final approval is eminently appropriate. *See McClean v. Health Sys., Inc.*, No. 6:11-CV-03037, 2015 WL 12426091, at *6 ("No Class Member filed an objection to this settlement, and only fourteen individuals opted out (.04% of the Class). This lack of opposition clearly supports approval."). Moreover, where the number of individuals opting out represents a small percentage of the total number of class members, final approval is likewise appropriate. *See id.* (granting final approval where only .04% of class members opted out); *Marshall*, 787 F.3d at 513–14 (affirming final approval where less than ten percent of class members opted out). This is because "[t]he district court has a duty to the silent majority as well as the vocal minority," and the silence of notified class members is construed as support. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005); *see also Marshall*, 787 F.3d at 513 (approving district court's finding that "settlement was fair, reasonable, and adequate for the majority of the class, which happened to be the quiet, absent majority"); *Elliott.*, 680 F.2d at 1226 n.1 (construing silence as support).

The fact that no class members have objected to the settlement and only eleven have opted out, clearly weighs heavily, if not entirely, in favor of final settlement approval.

**f)    The Strength of the Plaintiffs' Case**

After thorough investigation of the facts and law, the parties have gained a comprehensive knowledge of Plaintiffs' claims and Defendant's defenses. Consequently, the parties have

sufficient evidence to make an informed assessment of the merits of their positions. Based on their knowledge of the case and applicable law, as well as their experience in similar actions, the parties' counsel believe the settlement is fair, reasonable and adequate.

The parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is class certification and recovery on the merits. Plaintiffs' worst-case scenario is that the class is not certified or decertified, summary judgment is granted to Defendant, and/or Plaintiffs lose at trial. Or even if the Plaintiffs were to prevail, a finding that the expert's assessed damages were overstated due to improper calculations and inappropriate extrapolation. The result is not assured for either side. Even after a successful mediation using a nationally-renowned mediator produced a MOU that was agreed upon in principle, it took the parties more than two months to reach a written agreement on all terms. The details of the settlement involved extensive negotiation and compromise. This reflects the parties' zealous representations of their respective positions on the claims and defenses, and the difficulties and risks associated with protracted litigation.

Furthermore, even if this case were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions would remain as to the measure of damages and the entitlement of each class member to recover for alleged tip-credit notice violations and improper tip credit deductions, respectively. Although Plaintiffs believe strongly in the merits of their claims, the great number of uncertainties in ultimately calculating class damages makes it difficult to predict how the Court would make an assessment and award.

On the other hand, the settlement proposed ensures that class members will recover proportionally to their alleged injuries. Claiming Rule 23 class members will receive an award

proportionate to time worked and applicable state law tip credit rate over the full duration of the applicable time period. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation, and weighs in favor of approving the proposed settlement.

In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law. While both sides believe the facts support their respective positions, Plaintiffs and Firebirds reached this proposed compromise after extended settlement discussion facilitated by a mediator. The parties therefore request that the Court preliminarily approve the settlement and authorize notice to be sent to the respective class members.

### B.     Approval of the FLSA Class Settlement

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel and provides meaningful, significant, monetary relief to all party Plaintiffs. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was contested and settled after a mediation with Dianne Welsh, one of the Country's most experienced wage and hour class mediators. Only after significant, intensive discovery, data analysis and shuttle diplomacy via the mediation process, were the parties able to reach an accord. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt.

The settlement offers a significant payment to the Plaintiffs and participating class members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of time worked in a covered position. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals.  Or, such recovery may not occur at all after trial and appeal. For these

reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Accordingly, Plaintiffs respectfully request that the Court approve the settlement and order that the Plaintiffs and the Participating Class Members be paid in accordance with the terms of the settlement agreement. A proposed order granting settlement approval is attached as Exhibit 2.

### C.    The Court Should Approve the Requested Service Awards

Plaintiffs seek a service payment for the named Plaintiff and early opt in ("Named Plaintiffs") who provided invaluable service to the group, totaling less than 1% of the total settlement fund. This service provided necessary evidence for the parties, counsel, and the Court, furthering the interests of the class as a whole. The Named Plaintiff and early opt in request an award of $15,000.00 each in recognition of their service to the class as a whole through litigation, as well as in consideration for their general release of all claims against the Defendant. Named Plaintiff worked with Class Counsel before and throughout this litigation in pursuing these claims on behalf of class members, including appearing for a deposition, providing statements and affidavits, and attending mediations. The Named Plaintiff and early opt in are also releasing all claims – not just wage and hour claims.

The reason for this service payment, in addition to the general release, is to ensure that those individuals, who chose to participate and provided invaluable information about Firebirds, its policies, procedures, and information regarding the Defendant, are compensated for the risk that they undertook in bringing this action. But for their actions, Firebirds would have retained the benefit of its alleged failure to pay full minimum wage for non-tip-producing activities that exceeded the 20% limitation. The Named Plaintiffs should be rewarded to encourage others who would be subject to future FLSA violations to assert their rights to fair pay under federal wage law.

Under the Settlement Agreement, the requested service award constitutes less than 1% of the settlement amount. Additionally, the Named Plaintiff and early opt in took a risk by joining the litigation. At the time of filing, he was employed by Defendant and risked retaliation for participation in the wage claims. He will forever be subject to background checks on employment applications, and there is risk that if an employer learns of their previous litigation, it may be less likely to hire them. In light of the small percentage of the settlement fund that the monies represent, Plaintiff respectfully requests that the incentive award be approved.

Courts recognized that the risk, time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what the typical class member is receiving. *See Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking*

*Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Flores v. Anjost Corp.*, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation).

Accordingly, Plaintiffs' request falls within a fair range of service awards – especially considering that they are releasing any and all claims against Firebirds.

## IV.    Plaintiffs' Application for Fees & Expenses Should be Approved

Plaintiffs ask the Court to approve two payments from the common fund: (1) reasonable attorneys' fees in the amount of one-third of the common fund, and (2) reimbursement of their reasonable and necessary expenses totaling approximately $23,838.00.

The Supreme Court has expressed a preference that parties agree to the amount of the fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Here, the parties have done so because Firebirds has agreed it will not oppose an attorneys' fee request for up to one-third of the common fund.

When, as here, a settlement yields a common fund, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). This

common fund doctrine is firmly rooted in American case law. *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenso*n, 465 U.S. 886, 900 n.16 (1984).3 This Court has recognized attorney fees are appropriately awarded from a class action settlement fund, "on the theory 'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *See In re: Urethene Antitrust Litigation*, 2016 WL 4060156, at *4 (D. Kan. July 29, 2016) (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Importantly, all Class members who willingly choose to participate will do so (1) *after* they have been informed *via* the Court's approved notice that one-third of the common fund will be paid as fees, and (2) with the opportunity to object to the requested fees. "The Tenth Circuit has expressed a preference for the percentage-of-the-fund method of awarding attorney fees in common fund cases." *Id.* (citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995)). The percentage of the common fund approach is especially appropriate where, as here, (1) the class of persons benefitted by the lawsuit is easily identifiable, and (2) the benefits can be traced with some accuracy, and (3), the costs of the litigation can be shifted accurately to those who profit by it. *See Matter of Fesco Plastics Corp.*, 996 F.2d 152, 157 (7th Cir. 1993), citing *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980).

When setting percentage fee awards in common fund cases, the Tenth Circuit has endorsed the use of the following 12, so-called, *Johnson* factors:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Id.* "The most important factor in this case is undoubtedly the amount involved and the results obtained." *Id.*

The relevant *Johnson* factors support the fee request:

1. **The Amount Involved and the Results Obtained:**

The excellent result achieved by Plaintiffs' counsel is demonstrated by the size of the fund created in this case as well as the substantial recovery each misclassified, hourly laborer will receive. Plaintiffs' counsel deserves great credit for the relief provided to each class member in this case.

In many class action settlements, the relief provided is small on a per class member basis, it is not uncommon that only a small percentage of class members actually receive any benefit. In contrast, in this case plaintiffs' counsel successfully negotiated a settlement that maximized the number of individuals who would recover – each worker who was affected by Defendant's policies stands to receive a sizeable award, and those choosing to affirmatively join in the settlement receive double the award. In fact, every class member will compensated, regardless of whether he or she affirmatively joins in the settlement. Consequently, all affected Class members will attain sizeable relief under this settlement, which is credit to how plaintiffs' counsel structured the settlement.

Overall, the settlement represents an excellent outcome for the class members The Gross Settlement Amount is substantial at $2,500,000.00. Of this amount, Plaintiff's Counsel is seeking 1/3 for fees, future attorney fees involved in the litigation, and for expenses, and costs. Each class member stands to receive more than their actual lost wages, even after the award of attorneys' fees. Moreover, in light of the legal and factual complexities of this case, not the least of which involves

establishing exact number of minutes worked on each shift by each putative class member performing non-tip-producing activities, there is no doubt that this is an extremely favorable settlement. The settlement payments are available to class members without the uncertainty of trial and are being delivered through this settlement rather than years of litigation. This fact alone qualifies the result of this settlement as excellent under any reasonable assessment.

The release executed by the qualified class members who decide to participate in the settlement is not general in nature. They will only be releasing wage and hour claims under applicable federal law. The narrow nature of the release exemplifies the results achieved for the FLSA class. *See Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1096 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

**2. The customary fee, awards in similar cases, and the prearranged fee**.

The preferred method for awarding attorneys' fees to a prevailing party is to award a percentage of the common fund created by the litigation. *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir. 1994). Courts "frequently award[ed] attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *Wass v. NPC International, Inc.,* No. 02254-JWL, Doc. 359 (D. Kan. June 27, 2012) (approving one-third of the common fund in FLSA case when plaintiff counsel's request was approximately double their lodestar amount as of the date of the final approval motion); *Barnwell v. Corrections Corp. of Am.,* Order Approving Settlement Agreement, Case No. 2:08-CV-02151-JWL-DJW (D. Kan. Feb. 12, 2009); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee

awards between 25% and 36%); *Harger v. Fairway Management, et. al.,* No. 2:15-cv-04232-NKL, ECF Doc No. 145 (W.D.Mo. April 17, 2017) (approving 33.3% of the fund); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, Docs. 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Brown v. Time Warner Cable, Inc.,* Case no. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D. Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); *Burks*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33 1/3% attorney's fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p.2 & Doc. 38, p.4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *EEOC v. Fairbault Foods, Inc.,* Civ. No. 07-3976, 2008 WL 879999, at *4, 2008 U.S. Dist. LEXIS 29132, at *13 (D. Minn. Mar. 28, 2008) (approving fee award of approximately 30% of the settlement fund); *Carlson,* 2006 WL 2671105, at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving a fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case no.: 07-1535 (E.D.Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case no.: 08-0273 (E.D.Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF(S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%)

of the Settlement Fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

Use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986). Third, use of the percentage method decreases the burden imposed on the Court by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

As courts have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common

29

fund situations); *see also Stoneridge Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (W.D. Mo. 2005). Moreover, Circuits, including this one, express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); *Prudential Ins. Co.*, 148 F.3d at 333 (the percentage of the fund approach "rewards counsel for success and penalizes it for failure.") (citation omitted).

Here, one-third of the settlement fund is well within the reasonable range of attorney fee awards. Indeed, the representation agreements between Class Counsel and the Named Plaintiff provide for fees of 40% of recovery. As a result, the requested fee percentage is below that agreed to and which represents what a lawyer can reasonably obtain from a client. Similarly, all class members have been informed that Class Counsel will receive one-third of the fund. If the class member does not like the deal, then he or she could have objected or opted out and attempted to

hire another lawyer to prosecute his or her case at a lower rate. Not only have Class Counsel obtained a good result in litigation, but by filing this case, Firebirds has also remediated its side work practices that initially gave rise to this action. The Court should consider this in determining the value provide to the Class.

Finally, Plaintiffs' out-of-pocket costs, which included the mediation, deposition transcripts, and an expert were reasonable and necessary. Plaintiff, therefore, requests an attorney fee award of one-third of the common fund and reasonable and necessary expenses approximating $23,838.00.

2. **The skill requisite to perform the legal service properly and the experience, reputation and ability of the attorneys.**

This Court has recognized it takes a reasonably high level of skill in prosecuting similar cases. *See, generally, Garcia v. Tyson Foods, Inc.,* 2012 WL 5985561 (D. Kan. November 29, 2012). The case was against a large company and involved a class of plaintiffs from multiple locations. Plaintiffs' counsel needed to be experienced in the areas of wage and hour law and class actions, not to mention collective bargaining agreements.

Plaintiffs' counsel have prosecuted dozens of wage and hour and class action cases over the past 15 years, including multiple cases involving nationwide employers. They are routinely selected for Kansas City's Best of the Bar and Missouri/Kansas Super Lawyers and are well known in the wage and hour and class action litigation context.

3. **Other factors:[4]**

**The novelty and difficulty of the questions** – Restaurant litigation is relatively novel, and

---

[4] Plaintiff recognizes that a handful of the factors are neutral in this case. For example, taking on this case was neither desirable nor undesirable; counsel had no preexisting relationship with the named plaintiff; and because plaintiffs' counsel work at relatively small firms and take a personal role in each of their cases, they have rejected other potential cases due, in small part, to the time commitment to this case.

it has historically proven to be difficult and hard-fought litigation. Now particularly, with the Department of Labor withdrawing its previous position on the applicability of the 80/20 test, these types of cases are actually increasingly novel and difficult. This case is a hybrid class and collective action involving multiple defendants, laws, and facilities. As the Court is no doubt aware, the cost of bringing such a case to trial costs in the millions of dollars.

**Time Involved -** The Tenth Circuit has de-emphasized the time and labor component of the Johnson factors in common fund cases, and even when considered it "need not be evaluated using the lodestar formulation." *Brown* 838 F.2d at 456. Plaintiffs' counsel was able to achieve favorable settlement and in the relative middle of the process. This is a substantial benefit to the class. Counsel has dedicated significant time to litigating and resolving this case and will spend more time managing the settlement process and communicating with class members even long after the final approval hearing. Despite investigating and working on this matter for the past two years and the necessary work to finalize the settlement, class counsels' collective lodestar will be slightly less than the requested percentage of the fund. But this does not constitute a reason to reduce the fee. The most important factor is the result. As discussed above, the result is substantial and well received by the class. Further, if counsel will always be limited to their lodestar, even in the case of a beneficial common fund settlement, there would exist a perverse incentive for counsel to drag out the litigation. This is inconsistent with the Supreme Court's instruction to settle on fees when possible: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).[5]

---

[5] The percentage of the fund approach aids litigants and the courts because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 120 (2d.

Finally, Plaintiffs' out-of-pocket costs, which are primarily mediation expenses and court fees, are reasonable. Indeed, they are roughly $23,838.00 and comprise less than 0.1% of the settlement fund.

## CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. Plaintiffs, therefore, respectfully request that the Court grant final approval of the parties' settlement.

Respectfully submitted,

**THE HODGSON LAW FIRM, LLC**

*/s/ Michael Hodgson*
Michael Hodgson, KS Bar No. 21331
3609 SW Pryor Rd
Lee's Summit, MO 64082
mike@thehodgsonlawfirm.com
Tel: (816) 600.0117

Phillip M. Murphy, II, Esq.
**Law Office of Phillip M. Murphy, II**
4717 Grand Avenue, Suite 250
Kansas City, MO  64112
913-661-2900
Fax:  913-312-5841
Phillip@phillipmurphylaw.com

ATTORNEYS FOR PLAINTIFFS
AND THE CLASS

---

Cir. 2005) (emphasis added). Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery." *In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed using the Court's CM/ECF system, which sent electronic notification of the same this 6th day of May, 2019 to:

**GREENBERG TRAURIG**

JONATHAN SULDS
Metlife Building
200 Park Ave.
New York, NY 10166
Tel. No. (212) 801-6882
Fax No. (212) 801-6400
suldsj@gtlaw.com

JUSTIN KEITH
One International Place, Suite 2000
Boston, MA   02110
Tel. No. (617) 310-6230
Fax No. (617) 897-0930
keithj@gtlaw.com

**POLSINELLI, P.C.**

ROBERT J. HINGULA (KS #22203)
KATHARINE SANGHA (KS #26232)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Tel. No. (816) 753-1000
Fax No.: (816) 753-1536
rhingula@polsinelli.com
ksangha@polsinelli.com

ATTORNEYS FOR DEFENDANTS

/s/Michael Hodgson         _
Attorney for Plaintiffs